SPERTUS, LANDES & UMHOFER, LLP
Samuel A. Josephs (SBN 284035)
John Hanusz (SBN 277367)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711

Attorneys for Kanagasabai Kanakeswaran, M.D.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | CASE NO.  17-CR-00410-PSG |
|---|---|
| Plaintiff, | **KANAGASABAI KANAKESWARAN, M.D.'S MOTION TO DISMISS THE COUNTS AGAINST HIM FOR GOVERNMENT MISCONDUCT; DECLARATION OF SAMUEL A. JOSEPHS** |
| v. | |
| KANAGASABAI KANAKESWARAN, M.D., | |
| Defendant. | **DATE:** August 21, 2018 |
| | **TIME:** 9:00 a.m. |
| | **COURT:** 6A |

TO THIS HONORABLE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 21, 2018, or as soon as this matter may be heard in Courtroom 6A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Kanagasabai Kanakeswaran, M.D., will and hereby does move the Court for an order dismissing the counts against him due to government misconduct.  Out of an abundance of caution and

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

in recognition of the Court's order allowing disclosure of grand jury testimony to counsel for Dr. Kanakeswaran, Dr. Kanakeswaran submits the grand jury testimony (Exhibits E and F) under seal.

The application is based on the attached Memorandum of Points and Authorities, Declaration of Samuel A. Josephs and attached Exhibits, all files and records in this case, and such further information as may be provided to the Court regarding this application.

Dated:  August 19, 2018          Respectfully submitted,


                                 /s/
                                 _____
                                 Samuel A. Josephs
                                 John Hanusz
                                 Attorneys for Kanagasabai Kanakeswaran, M.D.

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Every single cooperating witness in this case has repeatedly lied to the government.  But what is more, the government's witnesses are continuing to lie while under oath and on the witness stand.  Yet the government is moving forward as if it has no obligation whatsoever to do anything about it.  Indeed, after one of its cooperating witnesses, Errol Lat, was caught in lie after lie on the stand, the government said nothing about it in its re-direct examination, and it offered "no position" when the Court asked whether the witness should be remanded as a result of his utter lack of candor and credibility.

Now, the government's star witness has demanded transactional immunity for lies she has previously told the government as well as lies that she failed to tell the government in any of her approximately one dozen meetings with prosecutors. Without any apparent concern for her lack of truthfulness, the government is in the process of trying to grant her such immunity so that she can testify without facing new charges for any lies she may say under oath.  If the government cannot immunize her in time, it appears the government will move forward with its case without her, notwithstanding the fact that it will have used her lies to secure an indictment against Dr. Kanakeswaran and having done nothing to expose the unequivocal lies she told the government.

In addition, the government agents themselves presented demonstrably false testimony to the grand jury.  And again, the government has done nothing to correct the record when those same agents testified during trial.  The government is not complying with its obligations, and the Constitution demands that this case be dismissed or that a mistrial be granted.

While it is common for defense counsel to argue to the jury that cooperators are incentivized to lie, here the government's reliance on witnesses who have lied

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

over and over and over again, both in proffer sessions with the government and under oath to this Court and to the jury, is truly extraordinary.  The Supreme Court has made clear that the government has constitutional obligations to prevent the presentation of false or misleading testimony in pursuit of a conviction, which includes prohibiting false testimony elicited on cross-examination, false testimony impacting only credibility, and situations where a prosecutor does not know – but should know – that the witness is testifying falsely.  A prosecutor also has a constitutional duty to correct evidence he or she knows is false, even if it was not intentionally submitted, and a prosecutor "on notice" that his witness may testify falsely cannot attempt to "finesse the problem" by sitting on his hands; he must instead "search for the truth." *Commonwealth of N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1118 (9th Cir. 2001) (Trott, J.)

> The ultimate mission of the system upon which we rely to protect the liberty of the accused as well as the welfare of society is to ascertain the factual truth, and to do so in a manner that comports with due process of law as defined by our Constitution.  **This important mission is utterly derailed by unchecked lying witnesses, and by any law enforcement officer or prosecutor who finds it tactically advantageous to turn a blind eye to the manifest potential for malevolent disinformation**.

*Id.* (emphasis added).

The record in this case thus far confirms the following:

- Government cooperator Errol Lat took the stand and (1) lied about hundreds of thousands of dollars he took out of Star and deposited into his own personal accounts, (2) lied about withdrawing hundreds of thousands of dollars from Star and wiring it to the Philippines, (3) lied about the information contained in the tax returns he submitted to the

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

2.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

government and the defense, where he falsely claimed he took zero income from Star, (4) lied about committing visa fraud in connection with the immigration application filed on behalf of his employee, Vincent Senatin, and (5) testified that it was Vincent Senatin, not Errol Lat, who created the spreadsheet that allegedly tracked referral payments to doctors.  At the conclusion of his testimony, the Court found that Mr. Lat perjured himself, lied about taking money from Star, and lied about probably most of what he has said in this case.  The government did nothing to correct the record, and took "no position" when the Court inquired as to whether Mr. Lat should be remanded for perjury.

- Government cooperator Vincent Senatin took the stand and (1) lied about committing visa fraud in connection with the immigration application Errol Lat filed on his behalf, claiming that Mr. Lat provided him with false tax returns that he then further doctored, and (2) testified that it was Errol Lat, not Vincent Senatin, who created the spreadsheet that allegedly tracked referral payments to doctors.

- Government witness Chris Legaspi took the stand and testified that he (1) lied to the government on July 3, 2018, when he told the government **he never made kickback payments to Dr. Kanakeswaran** (Declaration of Samuel A. Josephs ¶ 2 ("Josephs Decl."); Exhibit A: July 3, 2018 Interview with Chris Legaspi), (2) lied to the government on July 3, 2018 when he told the government **he never got overpaid by check in order to provide cash to Dr. Kanakeswaran** (Exhibit A), (3) lied in connection with his United States citizenship application when he said he had never falsely claimed to be a United States citizen, (4) lied on both his insurance broker and securities license applications by falsely claiming to be a United States citizen, and (5) apparently lied on

3.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

at least his 2009 tax return when he claimed \$33,300 in income from Star, a portion of which he now alleges he paid to Dr. Kanakeswaran.

- Government cooperator Corinne Chavez, who is yet to testify in this case, has lied to the government on multiple occasions that will be thoroughly addressed during cross-examination, and told the government in her first two proffer sessions on May 23, 2017, and May 30, 2017 that **she never paid kickbacks to Dr. Kanakeswaran**. (Josephs Decl. ¶ 3; Exhibit C: May 23, 2017 Interview with Corinne Chavez; Exhibit D: May 30, 2017 Interview with Corinne Chavez.) Ms. Chavez's statements during her proffer also directly contradict those of Elaine Lat's, who is not cooperating and who the government has decided not to call as a trial witness, in the manner by which payments were allegedly delivered to Dr. Kanakeswaran.[1]

- During its presentation to the grand jury on June 29, 2017, FBI Special Agent Richard Mennuti said, "I know for a fact based on witnesses that Dr. Kanakeswaran did, in fact, deposit his kickbacks into his bank account on a regular basis." Josephs Decl. ¶ 4; Exhibit E: Mennuti Grand Jury Testimony, at pp. 29-30. **There is not a single witness statement in the discovery produced in this case corroborating that testimony**, and yet it was presented to the grand jury as though numerous witnesses supported SA Mennuti's testimony. The government said nothing about this in its presentation of Mennuti's testimony to the jury.

---

[1]     If the Court requests, the defense will provide the Court with an *in camera* proffer detailing Ms. Chavez's many lies to the government and the additional criminal activity in which she has participated so that it may prevent a preview to the government of defense counsel's cross-examination.

4.

- In its presentation to the grand jury in the related case, *United States v. Lat, et al.*, CR 16-365-PSG, the government told the grand jury that Thelma Lat's July 29, 2014 withdrawal was a kickback payment to Dr. Kain Kumar.  In its presentation to the grand jury in this case, it told the grand jury that Thelma Lat withdraw cash one time in July intended as a kickback payment to Dr. Kanakeswaran.  In her interviews with the government, Thelma Lat told the government that she did not know which doctor was supposed to receive the money she withdrew in July 2014.  The government has done nothing to correct the record and will likely not call Thelma Lat as a witness at trial.

Every single cooperating witness in this case has repeatedly changed his or her story, the government has inadequately vetted its witnesses, and the government is now asking for immunity for its star witness based on additional lies that may become apparent on the witness stand, though there is a strong likelihood that she will not testify at all.  In the interest of justice, and to conserve Court and jury resources in a trial that cannot possibly produce a Constitutionally sound conviction, the Court should declare a mistrial or dismiss this case.

## II.    ANALYSIS

**A.    The Court Should Dismiss this Case Under *Mooney*, *Napue*, *Alcorta*, and *Bowie*, Because the Government Knew or Should Have Known that Its Witnesses Were Going to Lie, and Has Failed to Sufficiently Investigate the Veracity of Their Testimony**

>    1. *Prosecutors have a duty to investigate and root out potential false testimony, and may not let their witnesses testify falsely.*

The Supreme Court has long emphasized the Constitution's "overriding concern with **the justice of finding guilt**," *United States v. Agurs*, 427 U.S. 97, 112 (1976), which guarantees for every defendant the right to a fair trial, *Turner v.*

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

5.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

*Louisiana*, 379 U.S. 466, 472 (1965).  As agents of the government, prosecutors play a unique role within this Constitutional arrangement.  Rather than representing "an ordinary party to a controversy," prosecutors represent "a sovereignty whose obligation [is] to govern impartially . . . and whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

To that end, prosecutors are subject to constraints and responsibilities that do not apply to other lawyers.  A prosecutor "may strike hard blows," but "is not at liberty to strike foul ones." *Id.*  The Ninth Circuit has likewise emphasized that prosecutors wield "awesome power" and therefore "are subject to constraints and responsibilities that don't apply to other lawyers." *United States v. Kojayan*, 8 F.3d 1315, 1323-24 (9th Cir. 1993).  "The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." *Id.* at 1323.  Law enforcement officers have similar responsibilities as "servant[s] of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *Berger*, 295 U.S. at 88.[2]

---

[2]     Numerous district courts, in the Ninth Circuit and elsewhere, have dismissed indictments based on misconduct by law enforcement officers in their investigation of cases and in testimony before the grand jury, including in cases where prosecutors did not know of the misconduct. *See, e.g.*, *United States v. Marshank*, 777 F. Supp. 1507, 1523-24 (N.D. Cal. 1991) (dismissing indictment where case agents and prosecutor colluded with defense counsel and hid misconduct from the defendant); *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (dismissing indictment where federal agent gave inaccurate testimony to the grand jury); *United States v. Castro-Gonzalez*, No. 13-cr-0693 AJB, 2014 WL 3490506, at *1-2 (S.D. Cal. July 11, 2014) (dismissing indictment based on "agent's misconduct" although "no fault is found with the U.S. Attorney's Office, which indeed did the right thing upon discovery of" the misconduct); *United States v. Cerullo*, No. 05-cr-1190 (BEN), 2007 WL 2683799, at *3-4 (S.D. Cal. Sept. 7, 2007) (dismissing indictment where prosecutor and testifying agent misled grand jury); *see also Wilson v. Lawrence Cty.*, 260 F.3d 946, 957 (8th Cir. 2001) (observing that "[l]aw enforcement officers, like

6.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Consistent with that obligation, the Supreme Court has long prohibited prosecutors from presenting false or misleading testimony in pursuit of a conviction. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). And to ensure that this prohibition has teeth, the Court has expanded it from a simple ban on suborning perjury, *Mooney*, 294 U.S. at 112, to one prohibiting false testimony elicited on cross-examination, *see Alcorta v. Texas*, 355 U.S. 28, 32 (1957), false testimony impacting only credibility, *see Napue v. Illinois*, 360 U.S. 264, 269 (1959),[3] and situations where a prosecutor does not know – but should know – that his witness is testifying falsely, *Agurs*, 427 U.S., at 103–104. A prosecutor also has a constitutional duty to correct evidence he or she knows is false, even if it was not intentionally submitted. *See Giles v. Maryland*, 386 U.S. 66 (1967). This is because "[a] conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness." *United States v. Young*, 17 F.3d 1201, 1203-04 (9th Cir. 1994). Even more, a prosecutor "on notice" that his witness may testify falsely cannot attempt to

_____

prosecutors," are required to "conduct their investigations and prosecutions fairly").

[3]     *See Napue*, 360 U.S. at 269 ("The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence . . . . A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth.") (citations and quotations omitted).

7.

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

1   "finesse the problem" by sitting on his hands; he must instead "search for the

2   truth." *Bowie*, 243 F.3d at 1118.[4]

3        2.   *Extensive cross-examination does not cleanse untrue testimony or*

4             *relieve the government from its duties.*

5        Because false testimony is not simply an issue of disclosure, even extensive

6   defense efforts to impeach a lying witness do not cleanse the Constitutional

7   violation. *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000) ("[T]he

8   government's duty to correct perjury by its witnesses is not discharged merely

9   because defense counsel knows, and the jury may figure out, that the testimony is

10  false"). Indeed, it is the prosecutor's job – not the defendant's – to ensure that he

11  presents only truthful and non-misleading testimony at trial. When he fails to do

12  that, he offends due process independent of any defense efforts to root out the

13  truth. *See LaPage*, 231 F.3d at 492; *Mooney*, 294 U.S. at 112 ("[Due process]

14  cannot be . . . be satisfied by mere notice and hearing if a state has contrived a

15  conviction through the pretense of a trial [that] depriv[es] a defendant of liberty

16  through . . . the presentation of [false] testimony"); *Bowie*, 243 F.3d at 1122

17  (explaining that, if a prosecutor on notice of potential perjury fails to investigate,

18  the defendant's attempt to counteract the false testimony "in court . . . is

19  irrelevant" since the violation stems from the prosecutor's independent duty "to

20  protect the trial process against fraud"); *LaPage*, 231 F.3d at 492 (All perjury

21  pollutes a trial, making it hard for jurors to see the truth . . . . The jury

22  understands defense counsel's duty of advocacy and frequently listens to defense

23

24  ―――――――――――――

25  [4]    *See Bowie*, 243 F.3d at 1118 (explaining that a prosecutor's "duty to protect

26  the criminal justice system," "to collect exculpatory evidence, to prevent fraud on

    the court, and to elicit the truth" is "not discharged . . . by pressing ahead without

27  a diligent and a good faith attempt to [investigate the facts regarding potential

28  false testimony]").

                                    8.

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

counsel with skepticism.  A prosecutor has a special duty commensurate with [his or her] unique power, to assure that defendants receive fair trials.").

        3.   *The government in this case knew or should have known about the multitude of lies that its witnesses have said or will say during the course of this trial.*

        a.   <u>Errol Lat's Lies</u>

As was made clear during trial, the government has been investigating Dr. Kanakeswaran since early 2015, and has been investigating Errol Lat and Star since before that.  Indeed, the discovery in this case includes interview reports concerning the investigation of Errol Lat dating back to 2007.  (Josephs Decl. ¶ 6.)  Given the length of the government's investigation of Star and the Lats, it is beyond question that the government either knew or should have known that Errol Lat would have been untruthful during his testimony about the hundreds of thousands of dollars he took out of Star and deposited into his own personal accounts, and those funds that he took out of Star and he wired to the Philippines.  The government should have also been aware of Mr. Lat's submission of numerous false tax returns whereby he claimed not to have taken any money out of Star, but instead that that money went to doctors as part of a kickback scheme (whereby Mr. Lat purportedly deducted those payments as business development expenses for tax return purposes).  The government should have also been aware of documents Mr. Lat forged, along with the help of Vincent Senatin, in what amounted to a successful visa fraud application submitted to the Department of Homeland Security.

        b.   <u>Chris Legaspi's Lies</u>

The government has also presented witnesses who have repeatedly changed their stories, lied to the government on numerous occasions, and who have become cooperating witnesses only after their stories aligned with the

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

government's theory of the case. Chris Legaspi, for example, told the government on July 3, 2018 that he never made kickback payments to Dr. Kanakeswaran, did not get overpaid for patient referrals so that he could share any of his check with Dr. Kanakeswaran, and never paid Dr. Kanakeswaran cash. (Exhibit A, at p. 3.) Legaspi was served with a trial subpoena and told he would be a witness in a trial involving Dr. Kanakeswaran. (Exhibit A, at p. 4.) Legaspi was also told **by the government** that any involvement he had with Star in 2008 or 2009 would be outside the statute of limitations, but that if he lied to the government he could be prosecuted. (Exhibit A, at p. 3.) The government then interviewed Legaspi again on July 6, 2018, at which point he told the government he could now recall **one time** he delivered cash to Dr Kanakeswaran. (Exhibit B, at p. 2.) At trial, Legaspi testified he was unsure if it was one time, or if he paid Dr. Kanakeswaran on other occasions, though he provided no details of any other alleged payments to Dr. Kanakeswaran.

Legaspi also admitted that he apparently lied on at least his 2009 tax return when he claimed $33,300 in income from Star, a portion of which he now claims he paid to Dr. Kanakeswaran. These records were provided to the defense by the government, and the government apparently made no attempt to ask Legaspi about them. (Josephs Decl. ¶ 7.) The government did learn prior to his testimony, however, that Legaspi lied in connection with his United States citizenship application when he said he had never falsely claimed to be a United States citizen, and lied on both his insurance broker and securities license applications by falsely claiming to be a United States citizen. (Josephs Decl. ¶ 8.)

   c. <u>Corinne Chavez's Lies</u>

Corinne Chavez is the government's star witness, and as the trial testimony of other witnesses has shown, the alleged deliver of cash payments to Dr. Kanakeswaran. Through its investigation, the defense has uncovered numerous

10.

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

lies Ms. Chavez has told the government, as well as additional criminal activity in which she has participated.  The government has met with Ms. Chavez at least nine times throughout this case.  In her first two proffer sessions on May 23, 2017 and May 30, 2017, Ms. Chavez told the government that she never paid kickbacks to Dr. Kanakeswaran, a story Ms. Chavez subsequently changed after the government told her it didn't believe her and that she could possibly face additional charges.  (Exhibit C, Exhibit D.)  Ms. Chavez's statements during her many proffer sessions also flatly contradict those of other witnesses, including Elaine Lat and Thelma Lat, neither of whom it seems the government is calling to testify.

Now, having been made aware that the defense has evidence that Ms. Chavez has told additional lies, and has participated in additional criminal activity, Ms. Chavez has invoked her Fifth Amendment right against self-incrimination.  The government is apparently attempting to seek full transactional immunity for Ms. Chavez, which will allow her to, essentially, say whatever she wants on the stand without fear of being prosecuted.

The government's disregard of its obligations to ascertain whether Ms. Chavez will be committing perjury flies in the face of *Mooney*, *Napue*, *Alcorta*, and *Bowie*.  "A criminal trial is not a game in which the State's function is to outwit and entrap its quarry."  *Giles*, 386 U.S. at 100 (Fortas, J., concurring).  "The ends in our system do *not* justify the means."  *Bowie*, 243 F.3d at 1124.  The Court should dismiss this case or declare a mistrial.

## B.   The Government May Not Present False or Misleading Testimony that Undermines the Grand Jury's Independence

The Fifth Amendment provides that an indictment may issue only from an independent grand jury.  *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 218-19 (1960).  The grand jury, as envisioned by the Framers, "serv[es] as a kind of

11.

buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992); *see also United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983) ("The Framers, considering the grand jury an institution central to the protection of our basic liberties, interposed it in the law enforcement process to safeguard citizens against governmental oppression."). An accused has the "right to have his indictment tested by [the grand jury's] independent judgment," *Al Mudarris*, 695 F.2d at 1186, and "the Supreme Court has steadfastly insisted that the grand jury remains as a shield against unfounded prosecutions," *United States v. Navarro-Vargas*, 408 F.3d 1184, 1196 (9th Cir. 2005).

A "prosecutor may not circumvent" this constitutional "safeguard by overreaching conduct that deprives the grand jury of autonomous and unbiased judgment." *Al Mudarris*, 695 F.2d at 1185. It is well-established that "[t]he Fifth Amendment may be violated if the independence of the grand jury in performing its historical function is substantially infringed." *United States v. Collins*, 684 F.3d 873, 885 (9th Cir. 2012) (alteration in original) (citation omitted).

While the government is not required to present exculpatory evidence to the grand jury, *United States v. Williams*, 504 U.S. 36, 51-52 (1992), it "has a duty of good faith to the Court, the grand jury, and the defendant," *United States v. Samango*, 607 F.2d 877, 884 (9th Cir. 1979). Prosecutors are "duty bound not to introduce false and misleading testimony" before the grand jury. *United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983). Failure to observe this duty "impair[s] the grand jury's integrity as an independent body." *Id.* at 761-62; *see also United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979) ("[T]he prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it or to engage in fundamentally unfair tactics before it."); *United States v. Red Elk*, 955 F. Supp. 1170, 1182 (D.S.D.

12.

1997) ("a prosecutor may not deliberately mislead a grand jury or instill false impressions to it in an effort to obtain an indictment"); *United States v. Roberts*, 481 F. Supp. 1385, 1390 (C.D. Cal. 1980) (just as "[m]en must turn square corners when they deal with the Government, . . . the Government in moving against the citizen should also turn square corners" (citation omitted)).

Indeed, while prosecutorial misconduct before a grand jury may take many forms, the presentation of false testimony to a grand jury is "most disturbing." *Hogan*, 712 F.2d at 761-62. "[T]he presentation of false evidence violates due process," *Phillips v. Woodford*, 267 F.3d 966, 984-85 (9th Cir. 2001), whether it occurs at trial or before a grand jury, *see, e.g.*, *United States v. Basurto*, 497 F.2d 781, 785-86 (9th Cir. 1974) (dismissing indictment where prosecutor took case to trial knowing that grand jury witness had committed perjury). The grand jury cannot perform independently its task of "determin[ing] whether there is probable cause to believe that the charges brought against the defendant are true, such that the defendant should stand trial," if material evidence presented to it is untrue. *United States v. Cederquist*, 641 F.2d 1347, 1352 (9th Cir. 1981).

The presentation of false or misleading evidence to a grand jury also is a profound violation of the federal prosecutor's "special duty not to impede the truth." *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009); *see also United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002) ("it is decidedly improper for the government to propound inferences that it knows to be false, or has very strong reason to doubt").

Where the government fails to observe this duty in the grand jury room, "a line must be drawn beyond which a prosecutor's control over a cooperative grand jury may not extend." *Samango*, 607 F.2d at 882. "Courts therefore will act when the grand jury's function has been so subverted as to compromise the integrity of the judicial process," and may dismiss an indictment either under the Constitution

13.

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1   or as an exercise of their inherent supervisory powers.  *Al Mudarris*, 695 F.2d at

2   1185; *see also Williams*, 504 U.S. at 46.

3          Courts have dismissed indictments in numerous cases where the

4   government knowingly presented false or misleading testimony to a grand jury.

5   *See, e.g.*, *Samango*, 607 F.2d 877, 883-84 (9th Cir. 1979) (affirming dismissal of

6   indictment where prosecutor gave grand jury a misleading transcript of prior

7   testimony); *Basurto*, 497 F.2d at 784-86 (overturning conviction where

8   government presented testimony to grand jury which it learned before trial was

9   perjured, but failed to inform the court of the perjury until trial); *Cerullo*, 2007

10  WL 2683799, at *3-4 (dismissing indictment where prosecutor and witnesses

11  repeatedly misled grand jury).

12         As the Ninth Circuit has explained, where a defendant's constitutional right

13  to an impartial grand jury is at issue, "[t]he relevant inquiry . . . focuses not on the

14  degree of culpability of the prosecutor, but on the impact of his misconduct on the

15  grand jury's impartiality."  *Sears, Roebuck & Co.*, 719 F.2d at 1392.  Indeed,

16  "[a]lthough an indictment may be dismissed only in flagrant cases of prosecutorial

17  misconduct, even unintentional misconduct may be sufficient."  *United States v.*

18  *De Rosa*, 783 F.2d 1401, 1406 (9th Cir. 1986); *see also Samango*, 607 F.2d at 882

19  ("Although deliberate introduction of perjured testimony is perhaps the most

20  flagrant example of misconduct, other prosecutorial behavior, even if

21  unintentional, can also cause improper influence and usurpation of the grand

22  jury's role."); *Roberts*, 481 F. Supp. at 1390 ("[T]he grand jury is, by law and long

23  standing tradition stemming from early English reaction against Star-Chamber

24  proceedings centuries ago, a shield for every person against an over-reaching,

25  over-zealous, albeit honest and perhaps even well-intentioned, prosecutor,

26  vigilantly to be protected by the courts.").

27

28

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

14.

**MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT**

Repeated false statements and misrepresentations to the grand jury by the government constitute flagrant misconduct by definition. "How could a prosecutor's failure to detect and correct numerous unfounded misstatements of an agent testifying under oath before a grand jury not be flagrant?" *United States v. Aguilar*, 831 F. Supp. 2d 1180, 1208 (C.D. Cal. 2011) (emphasis added).

1. *Special Agent Richard Mennuti falsely told the grand jury that according to witnesses, "I know for a fact based on witnesses" that Dr. Kanakeswaran deposited kickbacks into his bank accounts on a regular basis.*

The government presented its case to the grand jury on June 29, 2017. During that presentation, the government told the grand jury that certain cash deposits into Dr. Kanakeswaran's bank accounts represented illegal kickbacks that Dr. Kanakeswaran received from Star. (Exhibit E: Mennuti Grand Jury Testimony, at pp. 22-29.) The prosecutor asked Special Agent Mennuti whether the fact that the total amounts between the withdrawals from Star's bank accounts differed from the amounts of the cash deposits into Dr. Kankeswaran's bank accounts changed SA Mennuti's conclusion that the cash deposits into Dr. Kanakeswaran's bank accounts came from withdrawals from the Star accounts. (Exhibit E, at pp. 29-30.) SA Mennuti said it did not, because according to SA Mennuti, he knew "for a fact based on witnesses that Dr. Kanakeswaran did, in fact, deposit his kickbacks into his bank account on a regular basis." (Exhibit E, at p. 30.) **There is not a single witness statement in this case corroborating**

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

15.

**that testimony**, and yet it was presented to the grand jury as though numerous witnesses supported SA Mennuti's testimony.

2. *The government misled the grand jury about Thelma Lat's July 2014 withdrawal.*

Next, in its presentation to the grand jury in the related case, *United States v. Lat, et al.*, CR 16-365-PSG, Department of Health and Human Services Special Agent Christina Ramirez told the grand jury that Thelma Lat's July 29, 2014 withdrawal was a kickback payment to Dr. Kain Kumar.  (Josephs Decl. ¶ 5; Exhibit F: Ramirez Grand Jury Testimony, at pp. 30-32.)  In its presentation to the grand jury in this case, SA Mennuti told the grand jury that Thelma Lat withdrew cash one time in July intended as a kickback payment to Dr. Kanakeswaran. (Exhibit F, at pp. 13-14.)  The government gave conflicting presentations to the grand jury, and Ms. Lat's own statements contradict that her July 2014 withdrawal from Star's bank account was intended to be delivered to Corinne Chavez as a payment for Dr. Kanakeswaran.

Thelma Lat interviewed with the government on three occasions.  During all three occasions she was asked about a July 2014 meeting at Panera Bread with Chavez.  Her first interview took place on February 28, 2017.  (Josephs Decl. ¶ 9; Exhibit G: February 28, 2017 Interview with Thelma Lat.)  During that interview, Thelma Lat told the government that she withdrew $4,600 in cash on July 29, 2014, and delivered the money to Chavez.  Thelma Lat told the government she assumed the money was going to Dr. Kanakeswaran, but was not sure.  (Exhibit G, at p. 3.)  In her next interview on June 28, 2018, Ms. Lat told the government that Vincent Senatin instructed her to withdraw money in July 2014, and that Mr. Senatin instructed her to give $4,100 to Chavez.  (Josephs Decl. ¶ 10; Exhibit H: Notes of June 28, 2018 Interview with Thelma Lat.)  Ms. Lat said she did not know which doctor the money was for.  In her final interview with the

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr, Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1  government on July 5, 2018, Ms. Lat told the government she gave Ms. Chavez

2  $4,000 in cash, she didn't know if it was a kickback or for Corinne working as a

3  marketer.  (Josephs Decl. ¶ 11; Exhibit I: Notes of July 5, 2018 Interview with

4  Thelma Lat.)

5          The government presented information to the grand jury as though there

6  was no question that Thelma Lat withdrew money in July 2014 from Star in order

7  to pay kickbacks to Dr. Kanakeswaran.  (Exhibit E, at pp. 13-14.)  Ms. Lat's

8  conflicting testimony raises serious questions about the government's presentation

9  to the grand jury.  The government has done nothing to correct the record through

10  SA Mennuti's testimony, and will likely not call Thelma Lat as a witness at trial.

11  Thus, the government's presentation to the grand jury, whereby it represented that

12  there was **one occasion** in July 2014 in which Thelma Lat withdrew money

13  intended for Dr. Kanakeswaran, will not be corrected by the trial testimony in this

14  case.

15          3.  *Both instances of testimony before the grand jury prejudiced Dr.*

16              *Kanakeswaran.*

17          "[A]s a general matter, a district court may not dismiss an indictment for

18  errors in grand jury proceedings unless such errors prejudiced the defendants."

19  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  Dismissal of the

20  indictment is appropriate if the government's misconduct "substantially

21  influenced the grand jury's decision to indict" or if there is "grave doubt" that that

22  decision was free from such a substantial influence.  *Id.* at 256.  Such prejudice

23  may be created by "[t]he cumulative effect of the [prosecutor's] errors and

24  indiscretions," even if none standing alone "might have been enough to tip the

25  scales."  *Samango*, 607 F.2d at 882; *see also Peralta*, 763 F. Supp. at 21

26  (dismissing indictment where the defendant was "seriously prejudiced by the

27

28

                                    17.

1  cumulative effect" of the defects in the government's presentation to the grand

2  jury).

3          The government's false testimony to the grand jury substantially influenced

4  the grand jury's decision to indict.  Indeed, a key to the government's grand jury

5  presentation, and one of the key issues in this case, is the assertion that Dr.

6  Kanakeswaran deposited cash into his bank accounts that is directly traceable to

7  money that was withdrawn from Star.  In addressing the discrepancy between the

8  amounts withdrawn from Star and those that were deposited into Dr.

9  Kanakeswaran' s bank account, SA Mennuti falsely claimed, based on witnesses,

10  that he knew "for a fact" that Dr. Kanakeswaran deposited kickbacks into his bank

11  account on a regular basis.  That kind of reckless assertion, which is unsupported

12  by **any witness** is the kind of flagrant misconduct that infringes the grand jury's

13  independence, and goes "directly to the issue of probable cause to believe that

14  [Dr. Kanakeswaran] had committed a crime."  *United States v. Martinez*, 710 F.

15  Supp. 415, 418 (D.P.R. 1989).

16          Moreover, SA Mennuti testified that there was one occasion in July 2014 in

17  which Thelma Lat withdrew money from Star's bank account to pay kickbacks to

18  Dr. Kanakeswaran.  This testimony is wholly contradicted by Ms. Lat's own

19  statements to the government, yet the government brazenly presented SA

20  Mennuti's testimony to the grand jury as if there was no question that the July

21  2014 withdrawal by Thelma Lat was delivered to Dr. Kanakeswaran.

22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

18.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

### III.   CONCLUSION

For the foregoing reasons, Dr. Kanakeswaran respectfully requests that the Court dismiss the charges against him, or declare a mistrial in this matter.

Dated:  August 18, 2018                     Respectfully submitted,


                                            /s/
                                            _____
                                            Samuel A. Josephs
                                            John Hanusz
                                            Attorneys for Kanagasabai Kanakeswaran, M.D.

19.

MOTION TO DISMISS FOR GOVERNMENT MISCONDUCT

Spertus, Landes & Umhofer, LLP
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

## DECLARATION OF SAMUEL A. JOSEPHS

I, Samuel A. Josephs, declare and state:

1.     I represent Kanagasabai Kanakeswaran, M.D., ("Dr. Kanakeswaran") in this matter.  I am licensed to practice in the State of California, and admitted to practice before this Court.

2.     Attached as **Exhibit A** is a true and correct copy of the government's July 3, 2018 Interview with Chris Legaspi, which was produced in discovery in this case.

3.     Attached as **Exhibit B** is a true and correct copy of the government's July 6, 2018 Interview with Chris Legaspi, which was produced in discovery in this case.

4.     Attached as **Exhibits C and D** are true and correct copies of the government's May 23, 2017 Interview with Corinne Chavez (Exhibit B) and the government's May 30, 2017 Interview with Corinne Chavez (Exhibit C), both of which were produced in discovery in this case.

4.     Attached under separate cover as **Exhibit E** to Dr. Kanakeswaran's *ex parte* application to file grand jury exhibits under seal is FBI Special Agent Richard Mennuti's Grand Jury Testimony in this matter, which was produced in discovery in this case.

5.     Attached under separate cover as **Exhibit F** to Dr. Kanakeswaran's *ex parte* application to file grand jury exhibits under seal is Health and Human

1.

Services Special Agent Christina Ramirez's Grand Jury testimony in *United States v. Lat, et al.*, CR 16-365-PSG, which was produced in discovery in this case.

6.   The discovery in this case includes interview reports concerning the investigation of Errol Lat dating back to 2007.

7.   In the discovery in this case, the government produced Chris Legaspi's 2009 tax return, on which he claimed $33,300 in income from Star.

8.   Prior to trial, the government informed me that Chris Legaspi lied in connection with his United States citizenship application when he said he had never falsely claimed to be a United States citizen, and lied on both his insurance broker and securities license applications by falsely claiming to be a United States citizen.

9.   Attached as **Exhibit G** is a true and correct copy of the government's February 28, 2017 Interview with Thelma Lat, which was produced in discovery in this case.

10.   Attached as **Exhibit H** is a true and correct copy of the government's notes of its June 28, 2018 Interview with Thelma Lat, which was produced in discovery in this case.

11.   Attached as **Exhibit I** is a true and correct copy of the government's notes of its July 5, 2018 Interview with Thelma Lat, which was produced in discovery in this case.

Executed this 19th day of August, 2018, at Los Angeles, California.

/s/ *Samuel A. Josephs*
Samuel A. Josephs

DECLARATION OF SAMUEL A. JOSEPHS